Mr. Chief Justice Moore
delivered the opinion of the Court.
Plaintiffs in error were defendants in the trial court and will be referred to collectively as BCW or defendants, with the exception of plaintiff in error Joseph F. Negri who will be referred to by name. Defendants in error were plaintiffs in the trial court and they will be referred to as ABC.
ABC local union No. 240 is composed of a majority of the former members of BCW who disaffiliated themselves from that organization. The action commenced by ABC sought recovery of assets allegedly belonging to it following the withdrawal from BCW. The trial court *212 entered findings of fact and judgment against BCW and Negri for a proportionate part of the assets of the old local union to which the withdrawing workers formerly belonged as reflected by the respective membership of the old and the new local unions, as of the date on which the disaffiliation was actually completed. In the original complaint certain banks were named as defendants but the action as to them was dismissed.
Since these findings are fully supported by competent evidence we quote pertinent provisions thereof as follows:
“The defendant banks were dismissed from this action on motion. The remaining parties hereto, except defendants John Doe and Richard Roe, who were not served and have not appeared, were all members of the same international Union known as Bakery and Confectionery Workers’ International Union of America, hereafter referred to as ‘BCW International’; that BCW International had been affiliated with the AFL since 1887 and with the AFL-CIO since their merger in 1955; that there was no particular problem of any kind in the operation of BCW Local Union No. 240, hereafter referred to as ‘BCW No. 240,’ until about December 12, 1957, when said BCW International was expelled from AFL-CIO because of the dishonesty and corruption of its officers. There was no suspicion of dishonesty or corruption attached to the operation of BCW No. 240 nor to its officer defendants, Joseph F. Negri, John Doe and Richard Roe; nevertheless, the expulsion of the parent body from the AFL-CIO had the effect of causing the expulsion of BCW No. 240 from said AFL-CIO. The corruption of the parent organization BCW International and its expulsion from the AFL-CIO gave the majority of the members of BCW No. 240 great concern. They, therefore, gave instructions to their delegates to the International Convention to vote to ‘clean up’ the parent organization so that it could be re-admitted to the AFL-CIO. No action was taken at the convention to satisfy the requirements of the expulsion order and as *213 the returning delegates urged continuation to the local BCW as a member of BCW International, the majority of the members of BCW No. 240 at two special meetings, May 25 and May 31, 1958 (called for the purpose, by letter to each member of the Union in advance of said meetings), adopted by a majority of 80 to 90 per cent of the members, a resolution to disaffiliate BCW No. 240 from said BCW International on the ground that:
‘* * * Bakery and Confectionery Workers’ International Union of America has violated the fundamental and basic terms and conditions of its relationship, understanding, compact, and contract with its members and Locals, * * *,’ (Emphasis added) and by said resolution requested affiliation with the American Bakery and Confectionery Workers’ International Union, AFL-CIO, a newly organized international union, hereafter referred to as ‘ABC,’ and appointed trustees to effectuate this affiliation.
“Said resolution also directed that the property of said local union ‘would follow the decision of the majority.’
“Thereafter, the vote of the majority of the members of BCW No. 240 to disaffiliate from BCW International was ratified by an election in each member bakery or shop in the jurisdiction, leaving only a minority of 69 members who refused to be bound by the adopted resolution, and who continued to operate as a local union under the old name BCW No. 240, and retained and continues to retain the property and records of said old union. Thereafter, the majority, a number in excess of 700 members, were accepted by ABC International AFL-CIO as American Bakery and Confectionery Workers’ Union No. 240. Said American Bakery and Confectionery Workers’ Union No. 240 is hereafter referred to as ‘ABC No. 240.’
“That although a charter, Exhibit B, was issued to plaintiff ABC No. 240 on June 6, 1958, by ABC International, the new union did not become fully operative *214 until about a year and a half after the adoption of the resolution in May, 1958, during which time BCW No. 240 continued to operate as a union. It is not clear whether or not said 700 members received any benefit from this operation.
“Thereafter, about January 30, 1960, what was left of BCW No. 240 merged with another local union, BCW No. 26, and assigned the assets and records of BCW No. 240 to said BCW No. 26 without the consent of ABC No. 240. There is, therefore, no longer a union known as BCW No. 240. Individual defendant, Joseph F. Negri, was secretary-treasurer of BCW No. 240 and is now secretary-treasurer of BCW No. 26.
“On February 1, 1960, plaintiff ABC No. 240 filed this suit alleging that BCW No. 240, now ECW No. 26, and the individual defendants held said union assets in trust for the members of ABC No. 240 and they demand that said assets amounting to $25,000.00 be paid over to plaintiff ABC 240.
“Plaintiffs also contend that BCW No. 240 and BCW No. 26 entered into a conspiracy to merge for the purpose of depriving ABC No. 240 of the said assets. The Court can find no evidence of such conspiracy.
“The Court further finds that in May, 1958, the assets of BCW No. 240 were in excess of $27,000.00. In January, 1960, said assets amounted to $15,689.31 and in January, 1961, said assets amounted to $7,225.21.”
The trial court adjudged that:
“* * * when the BCW International was expelled from the AFL-CIO for reasons of dishonesty and corruption, said BCW International abrogated its contractual arrangements with BCW No. 240; that said BCW No. 240 was no longer under obligation of any kind to said BCW International, and that the adoption of the ‘Disaffiliation-Affiliation Resolution’ by a majority of the members on May 25 and May 31, 1958, effective^ disaffiliated said BCW No. 240 from said BCW International and the assets of said local union, which are the property of the *215 members, became the property, proportionately, of ABC No. 240, the legal successor to BCW No. 240.”
Judgment entered against BCW in the amount of,
“* * * $15,689.31 less 8.86% of said sum, or $1,390.07, or a net amount of $14,299.24, based upon the ratio of the number of members of old BCW No. 240 (69) who continued to affiliate with said old union as compared with the number of members (710) who disaffiliated and joined the new union. * * *”
As to Joseph F. Negri the court decreed as follows:
“* * * j.j. js further ordered that judgment enter against defendant Joseph F. Negri for any assets of the old BCW Local No. 240 in his custody or subject to his direction or control on December 7, 1964, and any amount collected from said defendant Negri pursuant to this judgment shall be credited upon the judgments heretofore entered against said local unions.”
The argument for reversal of the judgment is based upon two grounds, to wit:
(1) The evidence is insufficient to support the finding of the trial court bearing upon the dishonesty and corruption of BCW International resulting in expulsion from AFL-CIO.
(2) Facts were presented in evidence which would “constitute a defense of res judicata” and the court should have considered that defense notwithstanding that it was not pleaded and that the pretrial conference order specifically limited the issues of fact and law to be determined to those mentioned in detail in the pretrial order. No suggestion of “res judicata” was contained in that order.
As to argument No. (1) above, we need only say that the record shows an abundance of evidence supporting the findings of the trial court. Argument No. (2) has no merit and is not supported by any authority to which our attention has been directed by counsel for BCW. R.C.P. Colo. 8(c) specifically provides that the defense of “res judicata” shall be set forth *216 affirmatively by the pleading of the party placing reliance thereon. Citation of the numerous decisions of this court which hold that the “affirmative defenses” mentioned in Rule 8 (c) supra, must be pleaded, would add nothing but length to this opinion.
There is ample authority to support the decree of the trial court. Identical questions of law and fact have been determined in various jurisdictions, and the result reached by the trial court in the instant case has been decreed in the following cases: Crocker v. Weil, 227 Ore. 260, 361 P.2d 1014; Alvino v. Carraccio, 400 Pa. 477, 162 A.2d 358; Olson v. Carbonara, 21 Ill. App. 2d 69, 157 N.E. 2d 273; Bakery & Conf. Wkrs. Int. U. v. B. & C. W.I.U., 405 S.W. 2d 917.
The judgment is affirmed.